In The
# United States Court Of Appeals
For The Federal Circuit

**ORGANIC SEED GROWERS AND TRADE ASSOCIATION, ORGANIC CROP IMPROVEMENT ASSOCIATION INTERNATIONAL, INC., THE CORNUCOPIA INSTITUTE, DEMETER ASSOCIATION, INC., CENTER FOR FOOD SAFETY, BEYOND PESTICIDES, NAVDANYA INTERNATIONAL, MAINE ORGANIC FARMERS AND GARDENERS ASSOCIATION, NORTHEAST ORGANIC FARMING ASSOCIATION OF NEW YORK, NORTHEAST ORGANIC FARMING ASSOCIATION/MASSACHUSETTS CHAPTER, INC., NORTHEAST ORGANIC FARMING ASSOCIATION OF NEW HAMPSHIRE, NORTHEAST ORGANIC FARMING ASSOCIATION OF RHODE ISLAND, CT NOFA, NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT, RURAL VERMONT, OHIO ECOLOGICAL FOOD & FARM ASSOCIATION, FLORIDA CERTIFIED ORGANIC GROWERS AND CONSUMERS INC., SOUTHEAST IOWA ORGANIC ASSOCIATION, MENDOCINO ORGANIC NETWORK, NORTHEAST ORGANIC DAIRY PRODUCERS ALLIANCE, MIDWEST ORGANIC DAIRY PRODUCERS ALLIANCE, WESTERN ORGANIC DAIRY PRODUCERS ALLIANCE, CANADIAN ORGANIC GROWERS, PEACE RIVER ORGANIC PRODUCERS ASSOCIATION, FAMILY FARMER SEED COOPERATIVE, SUSTAINABLE LIVING SYSTEMS, GLOBAL ORGANIC ALLIANCE, FOOD DEMOCRACY NOW!, FARM-TO-CONSUMER LEGAL DEFENSE FUND, WESTON A. PRICE FOUNDATION, MICHAEL FIELDS AGRICULTURAL INSTITUTE, FEDCO SEEDS INC., ADAPTIVE SEEDS, LLC, SOW TRUE SEED, SOUTHERN EXPOSURE SEED EXCHANGE, MUMM'S SPROUTING SEEDS, BAKER CREEK HEIRLOOM SEED CO., LLC, COMSTOCK, FERRE & CO., LLC, SEEDKEEPERS, LLC, SISKIYOU SEEDS, COUNTRYSIDE ORGANICS, WILD GARDEN SEED, CUATRO PUERTAS, SEED WE NEED, ALBA RANCH, WILD PLUM FARM, GRATITUDE GARDENS, RICHARD EVERETT FARM, LLC, PHILADELPHIA COMMUNITY FARM, INC, GENESIS FARM, CHISPAS FARMS LLC, MIDHEAVEN FARMS, KOSKAN FARMS, CALIFORNIA CLOVERLEAF FARMS, NORTH OUTBACK FARM, TAYLOR FARMS, INC., RON GARGASZ ORGANIC FARMS, ABUNDANT ACRES, T & D WILLEY FARMS, FULL MOON FARM, INC., COMMON GOOD FARM, LLC, AMERICAN BUFFALO COMPANY, RADIANCE DAIRY, QUINELLA RANCH, NATURE'S WAY FARM LTD., LEVKE and PETER EGGERS FARM, FREY VINEYARDS, LTD., BRYCE STEPHENS, CHUCK NOBLE, LARHEA PEPPER, PAUL ROMERO, BRIAN WICKERT, BRUCE DRINKMAN, MURRAY BAST, and DONALD WRIGHT PATTERSON, JR.,**

*Plaintiffs-Appellants,*

and

**OCIA RESEARCH AND EDUCATION INC., NORTHERN PLAINS SUSTAINABLE AGRICULTURE SOCIETY, MANITOBA ORGANIC ALLIANCE, UNION PAYSANNE, FAMILY FARM DEFENDERS INC., INTERLAKE FORAGE SEEDS LTD., KIRSCHENMANN FAMILY FARMS INC., and JARDIN DEL ALMA,**

*Plaintiffs,*

v.

**MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC,**

*Defendants-Appellees.*

Appeal from the United States District Court for the Southern District of New York in case no. 11-CV-2163, Judge Naomi Reice Buchwald.

———————————

## REPLY BRIEF OF APPELLANTS

———————————

**Daniel B. Ravicher**
**Sabrina Y. Hassan**
**PUBLIC PATENT FOUNDATION**
**BENJAMIN N. CARDOZO SCHOOL OF LAW**
**55 Fifth Avenue**
**New York, NY 10003**
**(212) 790-0442**

*Dated: September 27, 2012*                          *Counsel for Appellants*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the plaintiffs-appellants certifies the following:

1.     The full name of every party or amicus represented by me is: Organic Seed Growers and Trade Association, Organic Crop Improvement Association International, Inc., The Cornucopia Institute, Demeter Association, Inc., Center for Food Safety, Beyond Pesticides, Navdanya International, Maine Organic Farmers and Gardeners Association, Northeast Organic Farming Association of New York, Northeast Organic Farming Association/Massachusetts Chapter, Inc., Northeast Organic Farming Association of New Hampshire, Northeast Organic Farming Association of Rhode Island, CT NOFA, Northeast Organic Farming Association of Vermont, Rural Vermont, Ohio Ecological Food & Farm Association, Florida Certified Organic Growers and Consumers Inc., Southeast Iowa Organic Association, Mendocino Organic Network, Northeast Organic Dairy Producers Alliance, Midwest Organic Dairy Producers Alliance, Western Organic Dairy Producers Alliance, Canadian Organic Growers, Peace River Organic Producers Association, Family Farmer Seed Cooperative, Sustainable Living Systems, Global Organic Alliance, Food Democracy Now!, Farm-to-Consumer Legal Defense Fund, Weston A. Price Foundation, Michael Fields Agricultural Institute, Fedco Seeds Inc., Adaptive Seeds, LLC, Sow True Seed, Southern Exposure Seed Exchange, Mumm's Sprouting Seeds, Baker Creek Heirloom Seed co., LLC, Comstock, Ferre & Co., LLC, Seedkeepers, LLC, Siskiyou Seeds, Countryside Organics, Wild Garden Seed, Cuatro Puertas, Seed We Need, Alba Ranch, Wild Plum Farm, Gratitude Gardens, Richard Everett Farm, LLC, Philadelphia Community Farm, Inc, Genesis Farm, Chispas Farms LLC, Midheaven Farms, Koskan Farms, California Cloverleaf Farms, North Outback Farm, Taylor Farms, Inc., Ron Gargasz Organic Farms, Abundant Acres, T & D Willey Farms, Full Moon Farm, Inc., Common Good Farm, LLC, American Buffalo Company, Radiance Dairy, Quinella Ranch, Nature's Way Farm Ld., Levke and Peter Eggers Farm, Frey Vineyards, Ltd., Bryce Stephens, Chuck Noble, LaRhea Pepper, Paul Romero, Brian Wickert, Bruce Drinkman, Murray Bast, and Donald Wright Patterson, Jr.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: NONE

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: NONE

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: Daniel B. Ravicher, Sabrina Hassan, Public Patent Foundation

| September 27, 2012 | /s/ Daniel B. Ravicher |
|:---:|:---:|
| Date | Daniel B. Ravicher |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................i

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION .................................................................................1

ARGUMENT .......................................................................................2

I.    MONSANTO'S PROPOSED LITANY OF REQUIREMENTS DOES NOT COMPORT WITH CONTROLLING PRECEDENT ...........................................................................2

II.    PLAINTIFFS HAVE ESTABLISHED THE CONSTITUTIONAL REQUIREMENTS FOR STANDING ..............6

    A.    *Lujan* Element 1, Injury-In-Fact: Appellants' Injuries Are Uncontested By Monsanto .........................................................7

    B.    *Lujan* Element 2, Causation: Appellants' Injury Is "Fairly Traceable" to Monsanto .............................................................9

        1.    Causation Exists Under Binding Precedent......................9

        2.    Monsanto Has The Same Incentive To Accuse Plaintiffs That It Did To Accuse Others In The Past ......11

    C.    *Lujan* Element 3, Redressability: Monsanto's Identification of Additional Injuries From Contamination That Would Not Be Redressed Does Not Eliminate Plaintiffs' Injuries That Would .................................................15

CONCLUSION ...................................................................................17

PROOF OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CONSTITUTION

Article III............................................................................................4

## CASES

*Adler v. Fenton*,
    65 U.S. 407 (1861)..........................................................................8

*Bresnick v. United States Vitamin Corp.*,
    139 F.2d 239 (2d Cir. 1943)............................................................3

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
    508 U.S. 83 (1993)..........................................................................3

*Dey Pharma, LP v. Sunovion Pharms. Inc.*,
    677 F.3d 1158 (Fed. Cir. 2012).....................................................15

*Holder v. Humanitarian Law Project*,
    130 S. Ct. 2705 (2010)....................................................................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................*passim*

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941)........................................................................3

*MedImmune v. Genentech, Inc.*,
    549 U.S. 118 (2007)................................................................*passim*

*Monsanto Canada Inc. v. Schmeiser*,
    [2002] F.C.J. No. 1209 (QL) 2002 F.C.A. 309 (Can.)...................12

*Steffel v. Thompson*,
    415 U.S. 452 (1974)........................................................................4

*Terrace v. Thompson*,
    263 U.S. 197 (1923)........................................................................................4

*Virginia v. Am. Booksellers Ass'n,*
    484 U.S. 383 (1988)....................................................................................6, 9

## OTHER

*Monsanto Still Suing Farmers For Seed Saving*,
    http://www.purefood.org/Monsanto/SeedSavingSuits.cfm ..........................14

# INTRODUCTION

Monsanto's brief discusses many issues that have nothing to do with the only question currently before the Court, whether this case presents a controversy appropriate for judicial resolution. It is irrelevant that Monsanto spends billions of dollars on transgenic seed research (Br. 5.), that there are twenty-three patents in suit (Br. 2.)[1], that both organic and transgenic industries have grown despite the admitted prevalence of transgenic contamination (Br. 7.), that there is federal regulation of agricultural practices (Br. 8-9.), or that Plaintiffs have a policy disagreement with agricultural biotechnology (Br. 2).

All that matters is whether this case presents a legal controversy meriting declaratory jurisdiction, which asks (i) whether there is an injury being suffered by Plaintiffs that is real, immediate and concrete, (ii) whether the injury is "fairly traceable" to Monsanto's actions, and (iii) whether the injury is "likely" to be redressed by the sought-after declaratory judgment. Upon review of the uncontroverted facts, Plaintiffs satisfy each of these three elements. Monsanto's argument against this conclusion fails to follow the *Lujan* legal framework and instead requires adoption of rigid rules of the type firmly rejected in *MedImmune*.

---

[1]     The patents in suit here were drawn directly from those patents Monsanto marks on its transgenic seed bags and asserts in patent infringement litigation.

## ARGUMENT

In their opening brief, Plaintiffs presented the legal framework for standing dictated by *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and expressly discussed each of its three elements and how they are satisfied in this case. In its brief, Monsanto failed to discuss the *Lujan* framework, instead conflating its various elements into a confusing litany of adjective-based requirements that do not comport with controlling precedent. Monsanto's resulting scattershot of factual and legal arguments do not overcome Plaintiffs' satisfaction of the three elements.

## I.    MONSANTO'S PROPOSED LITANY OF REQUIREMENTS DOES NOT COMPORT WITH CONTROLLING PRECEDENT

*MedImmune v. Genentech, Inc.*, the last Supreme Court case addressing declaratory judgment jurisdiction for patent disputes, embraces an all-the-circumstances analysis and reaffirms bright line tests are wholly inappropriate. 549 U.S. 118, 1336 (2007). Nevertheless, Monsanto asks this Court to turn language in *MedImmune* into a long checklist of absolute requirements in all cases. Br. 21-22 (identifying no less than nine (9) things a declaratory judgment plaintiff "must" show to have standing). *MedImmune*, however, itself stated that it was merely rephrasing the applicable law in simpler – *not more rigid* – terms: "Basically, the question in each case is whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

*MedImmune* prudently refrained from limiting future cases to the common facts of past declaratory judgment controversies, but yet Monsanto now asks this Court to do exactly that by claiming that, in all cases, the declaratory judgment defendant must direct a threat at the declaratory judgment plaintiff. Br. 18 ("this Court has repeatedly rejected jurisdiction in situations where the patentee has not taken targeted action *against one of the declaratory-judgment plaintiffs*" (emphasis in original)).

Neither controlling precedent of the Supreme Court, this Court, nor the district court in this case has adopted such an absolute requirement in all cases for declaratory judgment standing to exist. A25 ("suits brought by the patentee against parties other than the declaratory judgment plaintiffs may suffice to establish a case or controversy"); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) ("Merely the desire to avoid the threat of a 'scarecrow' patent, in Learned Hand's phrase, may therefore be sufficient to establish jurisdiction under the Declaratory Judgment Act.") (*citing Bresnick v. United States Vitamin Corp.*, 139 F.2d 239, 242 (2d Cir. 1943) (L. Hand, J)). Considering the provenance of the *MedImmune*

ruling, it is plain that Monsanto strains both its permissive language and its clear mandate of flexibility.

Rather than adopting a special unique-to-patent-law test for declaratory judgment standing, *MedImmune* applied the same law supporting pre-enforcement challenges to statutes to disputes between private parties regarding patent infringement. 549 U.S. at 134, n.12. "Article III does not favor litigants challenging threatened *government* enforcement action over litigants challenging threatened *private* enforcement action. Indeed, the latter is perhaps the easier category of cases . . .." 549 U.S. at 134, n.12 (emphasis original). Neither *MedImmune* nor the government enforcement challenge cases it drew from based a finding of jurisdiction on directed threats made by the declaratory defendant to the declaratory plaintiff. *See generally id*. (refraining from drawing any bright line, much less one requiring direct communication); *Steffel v. Thompson*, 415 U.S. 452 (1974) (recounting direct communication to plaintiff but also stating, "The prosecution of petitioner's handbilling companion is ample demonstration that petitioner's concern with arrest has not been 'chimerical.'"); *Terrace v. Thompson*, 263 U.S. 197, 215 (1923) (noting, "[t]he threatened enforcement of the law deters [the plaintiffs from engaging in banned activity]" without specifying whether the threat took the form of communication directed to the plaintiff).

Regarding the parallel between declaratory judgment challenges to statutes and declaratory judgment challenges to patents, and the District Court's error in holding cases of the former type are "wholly inapposite" to cases of the latter type (A21, n.9), Monsanto claims (Br. 33) that the District Court "explained" how the statute challenge cases are distinguishable and inapplicable, when in fact the District Court did not provide any "explanation" other than a bald conclusory statement that because they weren't patent cases they were "wholly inapposite."

In an attempt to cover up the District Court's absolute failure on this point, Monsanto now attempts to distinguish the statute challenge cases by saying that, "[e]ach involved a *more concrete* threat of enforcement by the defendant and/or a *more concrete* statement by the plaintiff of intent to engage in prohibited conduct. " Br. 33-34 (emphasis added). Plaintiffs are aware of no case where Monsanto's suggested "more" concreteness is required for standing. Rather, concreteness is, like pregnancy, a binary quality; it is either present or not. Neither *Lujan*, nor *MedImmune*, nor any other case requires or even inquires into the level of "concreteness" necessary for standing. It is thus transparent that what Monsanto attempts is to factually distinguish the binding precedent (something the District Court wholly failed to do), while not contradicting Plaintiffs' position that no *law* from any Supreme Court case requires directed action from a declaratory defendant to a declaratory plaintiff.

The absence of any law requiring directed action is illustrated by the facts in multiple Supreme Court cases. In *Holder v. Humanitarian Law Project*, for example, jurisdiction was based on (i) the plaintiffs' claims that they would engage in the banned activity if the ban were lifted and (ii) the government's prosecution of other parties for violating the statute in question. 130 S. Ct. 2705, 2717. In *Virginia v. American Booksellers*, the plaintiffs were allowed to challenge a statute before it was even in effect, making any enforcement or any threat of enforcement against anyone impossible. 484 U.S. 383 (1988). Monsanto's assertion that these cases support their position that Article III standing requires a directed action from Monsanto to Plaintiffs is strained, to say the least.

## II.  PLAINTIFFS HAVE ESTABLISHED THE CONSTITUTIONAL REQUIREMENTS FOR STANDING

As detailed in Plaintiffs' opening brief, and only summarized here for context, *MedImmune* explained that, where the party seeking declaratory relief is itself keeping the threat of suit at bay, like the Plaintiffs are here by choosing to forgo full use of their property and adopt expensive genetic testing, the question of justiciability can be described in terms of standing. 549 U.S. 118 at 128 note 8. The three elements of standing per *Lujan* are*:* (1) injury in fact ("an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical,"); (2) causation ("a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ...

trace[able] to the challenged action of the defendant'"); and (3) redressability ("it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'") 504 U.S. at 560-561 (internal citations omitted). In a very convoluted way, Monsanto contests Plaintiffs' satisfaction of each of these three elements. To keep the analysis simple, Plaintiffs again here, as they did in their opening brief, present the legal framework on an element-by-element basis.

### A. *Lujan* Element 1, Injury-In-Fact: Appellants' Injuries Are Uncontested By Monsanto

Monsanto argues that Plaintiffs have no injury unless and until they are at risk of being accused of patent infringement, which in this case first requires unintended contamination of Plaintiffs' property by Monsanto's transgenic seed. Br. 45. That argument reveals a fundamental misunderstanding of the applicable law. Plaintiffs' real and concrete injury here is the present invasion of their right to use their property. Some of the Plaintiffs have been forced to forgo planting certain crops that are vulnerable to contamination while others have been forced to adopt expensive genetic testing of their products. These injuries could not be more "concrete" and "actual," as required by *Lujan*. They are not in any way "hypothetical." Plaintiffs are not worried about "some day" having to forgo full use of their land. That day has already come. Likewise, Plaintiffs are not worried about "some day" having to adopt expensive genetic testing. That day, too, is here.

Plaintiffs are doing these things to avoid being contaminated by Monsanto's transgenic seed and then accused of patent infringement by Monsanto. Monsanto disputes the reasonableness of those decisions, and the District Court found them to be "not reasonable." A21, n.8. But, the debate about the cause of the injury (Monsanto or self-inflicted) has nothing to with whether the injury is "real", "concrete" and "imminent." Whether the injury of abridged property enjoyment being suffered by Plaintiffs today is self-inflicted or "fairly traceable" to Monsanto's spreading transgenic seed relates to the second element of *Lujan*, causation, discussed next.

For now, staying with element 1 of *Lujan*'s standing analysis, Plaintiffs satisfy this element because they have already suffered an invasion of their property rights. *See Lujan*, 504 U.S. at 560 (defining "injury in fact" as "an invasion of a legally protected interest which is (a) particularized and concrete and (b) 'actual or imminent, not "conjectural" or "hypothetical."'") It is uncontested that Plaintiffs are entitled to use and enjoy their property as they wish. *See, e.g., Adler v. Fenton*, 65 U.S. 407, 411 (1861). It is uncontroverted that Plaintiffs here are not fully exercising that right. These injuries are not "hypothetical," nor does Monsanto even attempt to argue that they are.

**B.** *Lujan* **Element 2, Causation: Appellants' Injury Is "Fairly Traceable" to Monsanto**

**1.     Causation Exists Under Binding Precedent**

As per the discussion of Supreme Court cases above and in Plaintiffs' opening brief, Article III standing does not require a direct threat be made in order for the declaratory judgment plaintiff's injury to be "fairly traceable" to the declaratory judgment defendant. For example, the mere existence of a potential legal prohibition banning the activity a plaintiff claims the right to undertake suffices. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988). In this case, Monsanto's patents restricting Plaintiffs' right to use and enjoy their property are coupled with a widely documented and well known history of aggressive patent enforcement unparalleled in the agricultural industry and Monsanto's admission that contamination of organic farmers and seed supplies by transgenic seed is an absolutely certainty. *See, e.g.,* Br. 7 ("neighboring growers have implemented coexistence practices to *limit* cross-pollination that would harm a crop's value" (emphasis added)).

Monsanto has never offered evidence that inadvertent cross-pollination will limit itself to the "trace amounts" it references in its "Commitment" (A508), and it has not made an enforceable promise not to sue Plaintiffs for possessing any amount of contaminated seed. Thus Plaintiffs' decision to limit the use of their property in order to reduce contamination risk is "fairly traceable" to Monsanto's

patents and history of patent assertion. *Lujan*, 504 U.S. at 560 (requiring merely "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant'"). Monsanto's suggestion that there must be a tangible cause-and-effect relationship between a declaratory judgment plaintiff's injury and a declaratory judgment defendant's actions stretches *Lujan* too far, as it only requires that such causal relationship be "fairly traceable."

Monsanto attempts to distinguish itself from the injury-causing government inaction of Supreme Court cases in which *MedImmune* found authority by chanting its hollow mantra that it has no reason, desire, or intent to enforce its patents against the Plaintiffs. *See* Br. 20, 23, 32, 34, 36. To seek credit for these empty statements is to demand something for nothing. If Monsanto intended to be bound by its statement that it wouldn't sue Plaintiffs, it would have offered (and still could offer today) a covenant not to sue them. Far from making it unlikely that Monsanto will enforce its patents against Plaintiffs, Monsanto's non-binding statements merely make it obvious that Monsanto wants to avoid providing jurisdiction to Plaintiffs in this case while at the same time not sacrificing its right to sue Plaintiffs later. While Monsanto's binding actions are proper material to consider in evaluating jurisdiction, its self-serving unenforceable statements are not. Lastly,

Monsanto has not said once that it could not sue Plaintiffs upon contamination. Surely it could.

### 2. Monsanto Has The Same Incentive To Accuse Plaintiffs That It Did To Accuse Others In The Past

Monsanto also indicated in its brief that one factor showing lack of causation was Plaintiffs' failure to identify an incentive for Monsanto to sue Plaintiffs. Br. 27. Plaintiffs accept Monsanto's invitation to clarify that point. Monsanto has a plain economic motive for suing Plaintiffs: to eliminate competitor seed companies and non-customer farmers. It may or may not be true that Monsanto would collect significant damages after suing Plaintiffs for patent infringement when they were contaminated.[2] Br. 27, n.8. Regardless, the cost of a single farmer like Bryce Stephens or Chuck Noble, or a small seed company like Fedco Seeds, defending themselves from a lawsuit against a corporate giant like Monsanto would unquestionably put them out of business, whether the lawsuit ultimately had merit or not. The mere burden of the suit alone would accomplish Monsanto's goal.

The pragmatic real-world impossibility of a single farmer or seed company, up against Monsanto's army of lawyers (they have no less than six attorneys on this case, while Plaintiffs have only two), trying to prove their innocence that any alleged "infringement" of Monsanto's patents was caused by undesired

---

[2] Monsanto offers no basis for its conclusion that any amount of inadvertent gene flow would be "small." Br. 27, n.8. The case of Percy Schmeiser, discussed *infra* indicates that it can be substantial.

contamination is a primary reason Plaintiffs were forced to join together to defend themselves from the threat of Monsanto's patent enforcement now, while they still have even the slightest of chance at success. Plaintiffs currently stand in the shoes once worn by David and Dawn Runyon, Troy Roush, Percy Schmeiser, and others, trying to make a living without using Monsanto products. They are now "similarly situated" to those parties before they were accused of patent infringement by Monsanto after being contaminated. To say Plaintiffs are not "similarly situated" to those parties is to accept Monsanto's biased positions on disputed facts.

Despite Monsanto's mischaracterizations and the District Court's failings on these factual issues (as described in Plaintiffs' opening brief and not repeated here), Plaintiffs today are indeed similarly situated to the targets of Monsanto's past accusations. For example, Monsanto notes that the Canadian federal court found Percy Schmeiser to be saving and planting seed he "knew or should have known was Roundup tolerant." Br. 28. Yet, Monsanto conveniently omits the fact that the Canadian trial court found that Percy Schmeiser had grown canola since the 1950s without purchasing Roundup Ready Canola and had never signed a Technology Use Agreement (i.e. patent license agreement) with Monsanto when, in the 1990s, the year after a diagonally-adjacent neighbor grew Roundup Ready Canola, he tested a section of his field with glyphosate and discovered that 60% of the sprayed crops survived. *Monsanto Canada Inc. v. Schmeiser*, 2002 FCA 309. Without

inviting transgenic crops onto his field, Schmeiser found himself unwittingly growing them in a quantity even Monsanto might admit exceeded "trace amounts."

And Plaintiffs are quite confident that's exactly the same treatment they will receive when they are contaminated by Monsanto's seed, as Monsanto will surely never admit Plaintiffs' were innocently contaminated, which would likely make Monsanto or its customer that was the source of the contamination liable to Plaintiffs for the economic injury caused by the contamination. Indeed, Monsanto has failed to identify a single instance of it ever making an unjustified accusation of patent infringement. Monsanto's story is that they have been 100% correct with every single "patent infringer" they've accused in the past. They've never been wrong, and they never will be wrong. That would be quite a remarkable act of corporate competence, and is in fact contradicted by Plaintiffs' factual allegations.

Regarding another past target, Monsanto's authority for contradicting the allegation that Troy Roush was an "unintentional infringer" is simply an Associated Press article that the district court cited. Br. 29; A15. Hypocritically, after relying on this media publication to dispute that Roush was an unintentional infringer, Monsanto summarily dismisses Plaintiffs' allegations about Monsanto's threats against David and Dawn Runyon as "unsupported" because they came from a separate media report. Br. 29, n.10; A154-155. If one media report is reliable for Monsanto (and the District Court) to dismiss out of hand the Roush case, why isn't

another media report just as reliable to support the Runyons case? Is CBS News less trustworthy than the AP?

If anything, the pithy AP newspaper article about Roush is much less reliable than the extensive CBS News television segment about the Runyons. For one, Mr. Roush denied the allegations against him in the AP story[3] ("The company claims the Roushes signed a technology agreement, but the Roushes say a seed dealer forged their names on the document"), while Monsanto was included in the CBS News report about the Runyons but did not in any way deny the claim that they had falsely accused them of patent infringement. A155. When viewed fairly, the AP article merely supports a finding of a dispute about whether Roush was accused of patent infringement after being unintentionally contaminated, while the CBS News segment undeniably supports a finding that the Runyons were.

### C. *Lujan* Element 3, Redressability: Monsanto's Identification of Additional Injuries From Contamination That Would Not Be Redressed Does Not Eliminate Plaintiffs' Injuries That Would

Monsanto argues a declaratory judgment would not redress Plaintiffs' injuries because Plaintiffs seek to avoid contact with Monsanto's seed for reasons other than being subject to patent infringement claims. Br. 48-49. It is obviously true that a declaratory judgment here would do nothing to eliminate the risk of

---

[3] See "Monsanto still suing farmers for seed saving," http://www.purefood.org/ Monsanto/SeedSavingSuits.cfm (last visited September 24, 2012).

transgenic seed contamination, but by pointing this out Monsanto is conflating two completely separate injuries. Plaintiffs' injury at issue here is Plaintiffs' inability to use their property as they wish without risking a lawsuit and treble damages for patent infringement. Plaintiffs' will indeed be economically harmed when they are contaminated, but this suit has nothing do with that second injury.

A declaratory judgment, however, need not cure all of a Plaintiff's real-world problems in order for there to be redressability, so long as it would "likely" redress the injury on which the complaint is based. *Lujan*, 504 U.S. at 561; *see also Dey Pharma, LP v. Sunovion Pharma.*, 677 F.3d 1158, 1164 (Fed. Cir. 2012) (finding that simply eliminating one barrier of multiple barriers was sufficient for declaratory jurisdiction).[4] Because the declaratory judgment Plaintiffs seek would eliminate the *legal* injury Plaintiffs now face, the element of redressability is met.

---

[4]    Specifically, the *Dey* court stated that "eliminating one barrier is sufficient for declaratory jurisdiction, so long as litigation is also pending that could eliminate the other barriers." *Dey Pharma,* 677 F.3d at 1164. That case was specific to the Orange Book litigation context, in which separate pending litigation is required for a generic manufacturer to continue making progress toward its single goal of marketing a drug. In the instant case, it is a declaratory judgment that would enable Plaintiffs to use their land as they wish without legal risk, then take action against the parties responsible for contamination once they were contaminated, to make progress toward a second goal-- eliminating the risk of contamination of their property. If there were a requirement that forced Plaintiffs to make themselves more vulnerable to contamination before securing a DJ against Monsanto, they would invite infringement accusations, which are the very evils Plaintiffs seek to avoid.

Further, Monsanto undercuts its own argument that it is the second injury motivating Plaintiffs' action here when it admits in its brief that the National Organic Program rules established by the USDA specifically considered and permit transgenic contamination. Br. 9 ("The USDA has specifically considered the issue of 'genetic drift,' and under the USDA's regulations, the inadvertent presence of biotech traits in crops does not prevent organic certification, as long as organic farms follow appropriate growing processes."). Indeed, as Monsanto concedes in its own brief, "The USDA has reported that no grower has ever lost organic certification as a result of inadvertent presence of transgenic material. " *Id.*

Thus, Monsanto's suggestion that Plaintiffs are forgoing use of their land and undertaking expensive genetic testing to avoid losing organic certification is just simply not true. It's never happened to any organic farmer ever. Not once. Further, not all of the Plaintiffs here are certified organic, meaning the non-organic Plaintiffs have no certification at all to lose. Chuck Noble, for example, is not certified organic and, thus, he is not worried one iota about losing organic certification. A721.

As documented in the declarations they submitted to the District Court, the real worry Plaintiffs have about contamination is being accused of patent infringement by Monsanto. For example, certified organic Plaintiff Bryce Stephens clearly stated in his declaration, "My fear of contamination by transgenic corn and

soybeans and the resulting risk of being accused of patent infringement prevent me from growing corn and soybeans on my farm. There is no other reason why I do not grow those crops and I would very much like to do so." A707. This is why the issuance of a declaratory judgment that Monsanto cannot sue Mr. Stephens, Mr. Noble and the other Plaintiffs for patent infringement would redress their injuries, because Plaintiffs would then no longer be forced to either abandon using their land as they would like (as Mr. Stephens is doing) or adopt expensive genetic testing (as Mr. Noble is doing) in order to avoid the risk of being accused of patent infringement by Monsanto.

## CONCLUSION

The judgment of the district court should be reversed.

Dated:  September 27, 2012                   /s/ Daniel B. Ravicher
                                             Daniel B. Ravicher
                                             Sabrina Y. Hassan
                                             Public Patent Foundation
                                             Benjamin N. Cardozo School of Law
                                             55 Fifth Avenue, Ste. 901
                                             New York, New York 10003
                                             (212) 790-0442

                                             *Counsel for Plaintiffs-Appellants*

## PROOF OF SERVICE

I hereby certify that, on this 27th day of September 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users, including:

Seth P. Waxman, Esq.
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
seth.waxman@wilmerhale.com

*Lead Counsel for Defendants-Appellees*

I further certify that, on the same date, the required paper copies of the foregoing were deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Melissa A. Dockery
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA 23219

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements, And Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains <u>3,871</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using <u>OpenOffice</u> in <u>14 Point Times Roman</u>.

Dated:  September 27, 2012         /s/ Daniel B. Ravicher_____
                                   Daniel B. Ravicher
                                   Sabrina Y. Hassan
                                   Public Patent Foundation
                                   Benjamin N. Cardozo School of Law
                                   55 Fifth Avenue, Ste. 901
                                   New York, New York 10003
                                   (212) 790-0442